IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>DAVID AND BETTY KAPLAN FAMILY TRUST, DAVID KAPLAN AND BETTY KAPLAN, individually and as trustees for DAVID AND BETTY KAPLAN FAMILY TRUST, LALEH ZELINSKY FAMILY TRUST, LALEH ZELINSKY, individually and as trustee for LALEH ZELINSKY FAMILY TRUST, ASM INVESTMENTS, INC., a California corporation, AND DOES 1–50,<br><br>    Defendants.<br>                                           / | No. C 15-00538 WHA<br><br>**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**INTRODUCTION**

In this declaratory judgment insurance action, plaintiff insurance company moves for summary judgment on two of its four claims. For the reasons stated below, plaintiff's motion is **DENIED**.

**STATEMENT**

This is an insurance-coverage action brought by plaintiff insurer against landlord defendants, the insureds, to determine the parties' rights and obligations under landlord defendants' commercial general-liability policy, effective May 1, 2013 to June 4, 2014. Defendants David and Betty Kaplan, individually and as trustees for co-defendant David and

1 Betty Kaplan Family Trust; Laleh Zelinsky, individually and as trustee for co-defendant Laleh
2 Zelinsky Family Trust; and ASM Investments, Inc., are landlords who own the Warfield Hotel,
3 a single-resident-occupancy hotel located at 118 Taylor Street in San Francisco's Tenderloin
4 neighborhood. Landlord defendants have been sued numerous times by residents of the
5 Warfield as well as by the City and County of San Francisco due to the uninhabitable conditions
6 maintained at the hotel (Scottsdale Exhs. 3, 7, 11, 14–15).

Most recently, and relevant to our case, is *Toliver v. Shaikh, et al.*, No. CGC 14-542085. The *Toliver* action is currently pending in San Francisco Superior Court and is set to go to trial in June 2016. There, seventy-eight plaintiffs, most of whom were not plaintiffs in prior actions against the Warfield, brought suit for: (1) negligence; (2) breach of the warranty of habitability; (3) breach of the warranty of quiet enjoyment; (4) violation of the San Francisco Rent Ordinance; (5) intentional infliction of emotional distress; (6) violation of California Civil Code Section 1942.4; and (7) violation of California Civil Code Section 1940.1. The named defendants in the *Toliver* action include David and Betty Kaplan, as trustees; Laleh Zelinsky, individually and as trustee; and ASM Investments, Inc., all defendants in this federal action (Scottsdale Exh. 3).

Plaintiff Scottsdale Insurance Company undertook the defense of the *Toliver* action, pursuant to a reservation of rights, and filed the instant complaint for declaratory relief. Scottsdale argues that the *Toliver* action is not covered based on the known-loss provisions in the insurance policy. Bodily injury and property damage are set forth in Coverage A of the policy, which reads:

> This insurance applies to "bodily injury" and "property damage" only if:
>
> \* \* \*
>
> Prior to the policy period, no insured listed under Paragraph 1. of Section II . . . knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

2

\* \* \*

> "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured . . . or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
>
> (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
>
> (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
>
> (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Essentially, the policy creates a coverage exclusion if the insured had been put on notice, before inception of the policy, by receiving a demand for damages or by other means, of the injury claimed during the policy period. The policy contains a similar known-loss provision for personal and advertising injury.

Prior to the *Toliver* action, Warfield hotel residents had sued landlord defendants on several occasions relating to habitability issues. A group of thirty-three plaintiffs filed an action in February 2012 alleging an array of habitability violations from 2009–2012 (the *Santa-Iglesia*s action). That action settled. Also in February 2012, an individual brought suit against landlord defendants alleging habitability violations spanning 2009–2010, which also settled (the *Prater* action). In August of 2013 (after inception of the instant policy in May 2013), a group of thirty-four plaintiffs brought another suit against landlord defendants alleging similar habitability violations, which settled (the *Ashdown* action). All of these private actions, including the present *Toliver* lawsuit, were brought by the same plaintiffs' law firm, the Hooshmand Law Group. In addition, in July 2013 (after inception of the instant policy in May 2013), the City and County of San Francisco brought suit against landlord defendants based on similar allegedly substandard living conditions. That action referenced several previous notices of complaints arising from the conditions at the Warfield Hotel, which spanned back to 2001 (Scottsdale Exhs. 3, 7, 11, 14–15).

Based on the existence of these prior lawsuits, and landlord defendants' knowledge of them, Scottsdale seeks a declaration that it has no duty to indemnify or defend landlord

1  defendants in relation to the most recent *Toliver* action. This order follows full briefing and oral
2  argument.

## ANALYSIS

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> A liability insurer's duty to defend will arise when a suit against an insured potentially seeks damages within the coverage of the policy. An insurer, however, need not defend if the third party complaint cannot, by any conceivable theory, raise a single issue which would bring it within policy coverage. Thus, the settled rule is that where a pleading against the insured raises the potential for coverage, the insurer must provide a defense. In order to prevail on a motion for the summary adjudication of the duty to defend, the insured need only show that the underlying claim may fall within coverage; the insurer must prove it cannot.

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal.App.4th 1017, 1032 (2002) (internal citations omitted).

"[A]n insurer will be required to defend a suit where the evidence suggests, but does not conclusively establish, that the loss is not covered. . . . A carrier remains free to seek declaratory relief if undisputed facts conclusively show, as a matter of law, that there is no potential for liability." *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 299 (1993) (internal citations omitted). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Id*. at 299–300. "An insurer may rely on an exclusion to deny coverage only if it provides conclusive evidence demonstrating that the exclusion applies. Thus, an insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds." *Atlantic Mutual*, 100 Cal.App.4th at 1038–39 (internal citations omitted).

Here, issues of material fact remain as to whether the policy's known-loss provisions absolve Scottsdale of its duty to defend in the underlying *Toliver* action. Specifically, Scottsdale has not established as a matter of law that the previous civil lawsuits put landlord defendants on notice of all specific claims alleged in *Toliver*. As stated above, only two of the

4

actions Scottsdale discusses predate the inception of the policy at issue in our case — the *Santa-Iglesias* and *Prater* actions — both filed in 2012.

The *Santa-Iglesias* action, filed by thirty-three plaintiffs, included many of the same alleged habitability violations as the underlying *Toliver* action. Seventeen of the *Santa-Iglesias* plaintiffs are also among the seventy-eight plaintiffs in *Toliver*. The *Santa-Iglesias* action implicated fourteen of the sixty-three units in the Warfield hotel. *Toliver*, in contrast, implicates forty units. The *Prater* action involved only a single plaintiff alleging defects in her individual unit. Thus, there are at least twenty-five units implicated in *Toliver* that were not addressed in *Santa-Iglesias* and *Prater* and *Toliver* includes a later time period.

Many of the defects alleged in the previous actions overlap with the *Toliver* allegations. Many of the same units are involved and all allege violations in common areas. The existence of the prior lawsuits likely put landlord defendants on notice of at least some violations alleged in *Toliver*. This is especially true in regards to the claims of the seventeen plaintiffs in *Toliver* who were also plaintiffs in the previous *Santa-Iglesias* action.

Nevertheless, Scottsdale has not established beyond "any doubt" that the known-loss provisions in the policy apply to *all* of the claims in *Toliver*. The California Supreme Court has established that "in a mixed action, the insurer has a duty to defend the action in its entirety." *Buss v. Superior Court*, 16 Cal.4th 35, 48 (1997). "To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not. To do so would be time consuming. It might also be futile." *Id*. at 49. Here, the facts in the underlying *Toliver* action have not been developed such that it can be determined conclusively that landlord defendants were fully on notice of all of the violations before signing on to the Scottsdale policy. In fact, at oral argument, Scottsdale's counsel emphasized that the *Toliver* action contained "no specific allegations in the complaint."

The same is true of the numerous complaints cited in the lawsuit brought against landlord defendants by the City of San Francisco in 2013, which referenced complaints about the Warfield Hotel dating back to 2001. For the same reasons as the *Santa-Iglesias* and *Prater*

5

1  actions, these complaints do not, as a matter of law, implicate the known-loss provisions of the
2  insurance policy. The California Supreme Court addressed a similar scenario in *Montrose*
3  *Chemical Corporation v. Admiral Insurance Company*, 10 Cal. 4th 645 (1995). There, the
4  insurance company pointed to a letter the insured received from the EPA, detailing violations at
5  the insured's plant. In rejecting the contention that this letter constituted "notice," such that
6  those violations constituted a known loss for insurance purposes, *Montrose* stated that a
7  "known-loss contention can seldom be successfully relied on by an insurer to defeat a duty to
8  defend because the factual uncertainties needed to be resolved in order to establish the defense
9  generally cannot be resolved on a motion for summary judgment." *Id*. at 691. So too here.[*]

10  Scottsdale essentially contends that the longstanding habitability issues at the Warfield
11  put landlord defendants on notice of the habitability violations alleged in *Toliver*. Scottsdale
12  correctly points out that landlord defendants "received a demand or claim for damages relating
13  to habitability issues at the Warfield Hotel prior to the May 1, 2013 inception date of the
14  Policy" (Reply at 2). That fact, however, is not dispositive. An insured being on notice of
15  general habitability allegations in certain parts of a building does not negate any future
16  insurance coverage for allegations relating to other partially overlapping, partially different
17  habitability issues. As demonstrated by the authority cited above, "the insured need only show
18  that the underlying claim may fall within coverage; the insurer must prove it cannot." *Atlantic*
19  *Mutual*, 100 Cal.App.4th at 1032, Simply asserting that landlord defendants must have been on
20  notice of the *Toliver* violations due to previous similar violations is not sufficient to warrant
21  summary judgment.

22  To rebut the contention that issues of fact exist as to landlord defendants' knowledge of
23  the alleged *Toliver* violations, Scottsdale asserts that "the triggering event for coverage is the
24  insured's wrongful act, not the claimants' injuries" (Reply at 3). This, however, does nothing to

---

[*] At oral argument, Scottsdale asserted that *Montrose* does not apply to our case because of the anti-*Montrose* provision contained in the Scottsdale policy. The anti-*Montrose* provision referred to, and anti-*Montrose* provisions generally, however, merely state that the wrongful conduct and the injury claimed under an insurance contract must both occur during the policy period. As stated above, Scottsdale has failed to conclusively prove that the cause of *all* of the *Toliver* plaintiffs' injuries took place before inception of the instant policy in May 2013.

6

1 change the equation. For the same reasons, Scottsdale has failed to conclusively establish that
2 the same alleged wrongful acts alleged in the previous lawsuits caused the violations alleged in
3 *Toliver*. While it is conceivable that this could be true, the existence of the prior actions and
4 complaints does not go so far as to establish knowledge as a matter of law.

Scottsdale fails to cite a single decision from our court of appeals or from a California appellate court that supports its assertion. That is because none exists. Instead, Scottsdale relies heavily on Judge Samuel Conti's decision in *Jardine v. Maryland Casualty Company*, No. 10–3335, 2011 WL 5778798 (N.D. Cal. Dec. 27, 2011) (Judge Samuel Conti). That decision, while not binding anyway, is distinguishable from our case. In *Jardine*, a building resident improperly applied a plaster to the property's walls, causing damage. He later purchased an insurance policy and later sought indemnification for wall damage. While he conceded he knew about damage to the north section of the wall, he stated he did not know about damage to the south section, and sought indemnification for the section he did not know had been damaged. The district court rejected Jardine's contention that he did not know about the damage to the south wall, concluding that the damage to the south section had merely been "a continuation, change or resumption of the sulfate attack in the [north] section that had manifested" earlier. *Id*. at *10.

Significantly, in *Jardine*, the underlying case had already proceeded to a bench trial and the facts had been established, in contrast to our case. More importantly, *Jardine* dealt with two discrete walls in the same unit, and it had been established that the same corrosive plaster had been applied to both of them. From those conceded facts, the district court concluded that damage to the second wall constituted a continuation of damage to the first wall. Many more variables remain in play here. The underlying *Toliver* action has seventy-eight plaintiffs. Only seventeen of those plaintiffs had been involved in actions commenced before the parties entered into the insurance agreement. Additionally, as stated above, the *Toliver* action involves twenty-five separate units not implicated in prior suits. Based on the differences between the underlying action and the previously settled actions, factual issues remain to be decided as to the scope of landlord defendants' knowledge of the alleged *Toliver* violations.

7

**CONCLUSION**

For the reasons stated above, Scottsdale's motion for partial summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 23, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE